UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| MENDOCINO GAME COMPANY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:02-CV-289-TS |
| | ) | |
| WARREN INDUSTRIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

**A. Background**

The Plaintiff, Mendocino Game Company, is a small corporation formed in 1995 to manufacture and sell a board game called *Pirateer: the Game of Outrageous Fortune*. The Defendant, Warren Industries, is a manufacturer and seller of puzzles and games. In 2001, the two companies agreed that the Plaintiff would have the exclusive right to sell the Defendant's products to independent or small chain retailers and that the Defendant would have exclusive license to promote and sell *Pirateer*. However, within a year, the parties' relationship deteriorated to the point that the Plaintiff sued the Defendant for breach of contract under the sales agreement, breach of contract under the licensing agreement, tortious interference with business relations, trademark infringement, and copyright infringement.

The suit culminated in a ten-day jury trial that ended with the jury finding for the Plaintiff on both contract claims and the copyright claim.[1] The jury awarded the Plaintiff $12,000 for the

---

[1] Before the case went to the jury, the Plaintiff dismissed its tortious interference and trademark infringement claims.

Defendant's breach of contract under the sales agreement and $32,000 in compensatory damages and $750 in statutory damages for its infringement of the Plaintiff's copyright in *Pirateer*. The Plaintiff did not receive a monetary award for the Defendant's breach of the licensing agreement.

After the trial, the Plaintiff moved in accordance with 17 U.S.C. § 505 (Copyright Act) for an award of costs and attorneys' fees in the amounts of $16,856.68 and $274,348.90. The Plaintiff believes that it should get attorneys' fees not only for the work done in relation to its copyright claim but also for the breach of contract claims and the claims it dismissed before the case went to the jury. The Plaintiff maintains that the award is proper because all these claims are factually and legally related to the copyright claim. The Defendant, on the other hand, argues that the Plaintiff may not recover any fees under 17 U.S.C. § 505. In the alternative, the Defendant submits that, if the Plaintiff were to recover attorneys' fees for the copyright claim, the amount should be minute and no award should be made for the remaining claims, as they do not share either common facts or similar legal theories with the copyright claim. The Defendant does not challenge the Plaintiff's request for costs.

**B. Applicable Law**

The Copyright Act gives discretion to the district court in awarding costs and attorneys' fees: "In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party . . . . Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505; *see also Gonzalez v. Transfer Techs., Inc.*, 301 F.3d 608, 609 (whether to grant attorneys' fees to the prevailing party is "pretty much to the discretion of the district judge").

The two most important considerations in determining whether to award attorneys'

2

> fees in copyright cases are the strength of the prevailing party's case and the amount of damages or other relief the party obtained. If the case was a toss-up and the prevailing party obtained generous damages . . . there is no urgent need to add an award of attorneys' fees. But if at the other extreme the claim or defense was frivolous and the prevailing party obtained no relief at all, the case for awarding him attorneys' fees is compelling.
>
> . . .
>
> We of course were not saying that the smaller the damages, the larger the fee. The fee is independent of the size of the damages. The point is only that when a meritorious claim or defense is not lucrative, an award of attorneys' fees may be necessary to enable the party possessing the meritorious claim or defense to press it to a successful conclusion rather than surrender it because the cost of vindication exceeds the private benefit to the party.

*Assessment Techs. of Wis., LLC v. Wiredata, Inc.*, 361 F.3d 434, 436–37 (7th Cir. 2004).

If the court determines that attorneys' fees are appropriate, the starting point for calculating them is the lodestar, which is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *City of Riverside v. Rivera*, 477 U.S. 561, 568 (1986). The party requesting attorneys' fees bears the burden of substantiating the reasonableness of the hours sought. *See Moore v. Univ. of Notre Dame*, 22 F. Supp. 2d 896, 908 (N.D. Ind. 1998). It "should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). "Counsel . . . should . . . exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary. . . . Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority." *Id.* at 434.

Once the lodestar is determined, the court may adjust the fee on the basis of how successful the prevailing party was. The court must ask two questions: "First, did the Plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded. Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee

award?" *Id.* Under this paradigm,

> the court must consider whether the plaintiffs have asserted any unsuccessful claims that are "distinctly different" from the claims on which the plaintiffs prevailed. Any distinctly different claims, whether factual or legal, should necessarily be excluded from the fee calculations. However, with unsuccessful but related claims—that is, claims related to prevailing claims by a "common core of facts" or based on "related legal theories"—the court must undertake another analysis, and concentrate on overall results obtained. "If the plaintiff has achieved only partial success . . . compensating the plaintiff for all hours expended on the litigation may be excessive. In such a situation, the court may adjust the award either by identifying specific hours that should be eliminated or by simply reducing the overall award to reflect the plaintiff's limited success."

*Spellan v. Bd. of Educ. for Dist. 111*, 59 F.3d 642, 646 (7th Cir. 1995) (citations omitted).

Hence, the Court must determine whether to award the Plaintiff attorneys' fees and, if so, what the lodestar is and whether it needs to be adjusted to reflect the Plaintiff's partial success in this case.

## C. Application of the Law

### (1) *Award of Attorneys' Fees is Appropriate*

As noted above, to determine whether an award of fees is fitting in copyright cases, the Court must consider the strength of the prevailing party's case and the amount of damages it received. *See Assessment Techs. of Wis., LLC*, 361 F.3d at 436–37. If the case is strong but the damages are not overly large, an award of attorneys' fees may be suitable so as to compensate the party for having proceeded with meritorious claim rather than surrendered its case because of high cost of litigation. The opposite is true as well.

In its discretion, the Court finds that the award of attorneys' fees is appropriate in this case. The Plaintiff's copyright claim was meritorious: the Plaintiff and the Defendant entered into a sales

4

agreement and a licensing agreement; the licensing agreement gave license to the Defendant to market and sell *Pirateer*, but the licence was in effect only if the parties performed their obligations under the sales agreement; the Defendant breached the sales agreement, therefore, terminating the license in *Pirateer*. In addition, the jury's award of $32,000 for the Defendant's copyright infringement was not significantly high, especially when it is considered in light of the Plaintiff's expense to prosecute this and other related claims. Finally, when the Plaintiff requested that the Defendant release the *Pirateer* copyright back to the Plaintiff so that it could pursue another licensee, the Defendant chose to hold onto the license although it had no plans to keep marketing the product. *See* Df. Ex. 12; Paul House Dep. at 14–15. Such conduct reflected poorly on the Defendant's effort to resolve the conflict between the parties. These factors weigh in favor of awarding attorneys' fees even if the jury did not find that the infringement was willful. *See Mary Ellen Enter. v. Camex, Inc.*, 68 F.3d 1065, 1072 (8th Cir.1995) ("Bad faith or wilfulness is not a prerequisite to an award of attorneys' fees.").

**(2)** *Lodestar*

Having determined that an award of fees is appropriate, the Court must calculate the lodestar. The Defendant does not object to the Plaintiff's attorneys' hourly rate of $200 at the beginning of the litigation and $235 toward the end. Neither does it object to the paralegal's hourly rate of $60 and later $85 rate. These rates are close to the local market rates, and the Court finds them reasonable.[2] *See McNabola v. Chi. Transit Auth.*, 10 F.3d 501, 518 (7th Cir. 1993) ("The reasonable

---

[2]Because the attorneys' and the paralegal's fees changed over the course of this litigation, the Court's adjustments will reflect the dollar amount at the rate the charge was incurred rather than the number of hours.

hourly rate used in calculating the lodestar must be based on the market rate for the attorney's work.").

The Plaintiff submitted its attorneys' billing sheets that reflect the hours Mr. James Fenton, Mr. Daniel McNamara, and Mr. David Bailey, as well as their paralegal, spent on this case. The billing period spans over a three-year period, from January 14, 2002, until May 31, 2005, and accounts for 1,639.60 hours. The Defendant has not challenged any time entries as unreasonable or duplicate and has resorted only to arguing that the Plaintiff should not be awarded the entirety of fees requested because it recovered only on one of its five claims. Nevertheless, the Court has reviewed the bill for hours that are excessive, redundant, or otherwise unnecessary. Such hours do exist and the Court will address them in turn.

(a) *Charges from Unspecified Person*

The Plaintiff submitted Mr. Fenton's affidavit explaining how the time on the billing sheet should be allocated among the attorneys and the paralegal. Mr. Fenton explains that he is identified as number 3, Mr. McNamara as number 4, Mr. Bailey as number 5, and the paralegal as number 7. However, the time sheet has charges for someone under number 2 whose hourly rate is indicated $200 in some entries and $50 in others.[3] Since these charges appear to be out of line with the rest of the billing statement, the Court will disregard them. Accordingly, the Court will discount $377.50 for these unknown charges.

---

[3]*See* Pf. Ex. A, entries for 10/30/2002, 10/31/2002, 01/08/2003, 02/13/2003, 02/18/2003.

(b) *Duplicate Charges*

The Court will also reduce the fee for duplicate charges. One such charge, on April 3, 2002, is apparent on its face. Others relate to the paralegal's unnecessary presence at the court mandated conferences or conferences with the client.[4] The Court will subtract these unnecessary charges in the amount of $1,352. The Court will also subtract the paralegal's charges for her time spent at trial. Since the Plaintiff was represented during most of the trial by two attorneys, Mr. Fenton and Mr. Bailey, the paralegal's continuous presence there was unnecessary. Accordingly, $4,080 will be subtracted from the bill for fees.[5] In turn, the Court finds that Mr. Bailey's presence at trial, which included complicated issues and lasted ten days, was reasonable, and no deductions will be applied in his behalf.

(c) *Discovery, Preparation for Trial, and Trial*

The Court finds that the Plaintiff's attorneys spent reasonable time traveling, preparing for depositions, taking depositions, preparing for trial, and conducting trial. As noted above, this was a lengthy litigation over multiple issues, involving parties from California and Indiana, and requiring numerous depositions. Also, Mr. Fenton and his paralegal spent a reasonable number of hours preparing for trial that was originally scheduled to begin on November 9, 2004: 106.15 hours for Mr. Fenton and 34.2 hours for his paralegal. Furthermore, Mr. Fenton spent reasonable time—35.9 hours—preparing and responding to motions in limine. However, when the trial was delayed until

---

[4]*See* Pf. Ex. A, entries for 06/25/2003, 07/21/2003, 07/23/2003, 07/30/2003, 08/11/2003, 08/12/2003, 08/13/2003, 08/14/2003, 08/29/2003, 09/29/2003, 04/01/2005, 04/02/2005, 04/11/200, and 05/10/2005.

[5]This amount reflects 8 hours for each trial day, except on the days when the Mr. Bailey was not present.

7

April 19, 2005, Mr. Fenton once again spent 137.85 hours from April 1 through April 18 for the same trial preparations that he had done earlier. In addition, Mr. Bailey and Mr. McNamara assisted him for a total of 21.2 hours. His paralegal spent another 96.1 hours. In light of earlier preparations for the same trial, Mr. Fenton's and his paralegal's hours are excessive. Mr. Fenton's and his paralegal's hours will be reduced by 70 hours each. Accordingly, the Court will discount $22,400 ($16,450 + $5,950).

Mr. Fenton represents that he spent 197 hours for trial and in-trial preparations on April 19 through May 4. The Court finds that 168 hours better reflect reasonable time required for this period (14–12 hour days, including Saturdays) . Thus, the Court will reduce Mr. Fenton's fee by $6,815 (29 hours at $235 per hour). The Court will not adjust the 58.05 hours Mr. Bailey and Mr. McNamara spent assisting him.

(d) *The Plaintiff's Motion for Attorneys' Fees*

Mr. Fenton submits that he spent 37 hours to prepare the motion for attorneys' fees. This time appears to be excessive for an attorney as qualified as Mr. Fenton, and the Court will reduce it by half, for a total of $4,347.50 (15.5 hours at $235 per hour). The Court will also reduce by half the paralegal's 16.5 hours associated with the same task for a total of $701.25 (8.25 hours at $85 per hour).

(e) *The Paralegal's Fees*

Finally, the Court will evaluate the paralegal's fees. "The relevant inquiry for requested paralegal fees is 'whether the work was sufficiently complex to justify the efforts of a paralegal, as

opposed to an employee at the next rung lower on the pay-scale ladder.' Accordingly, the district court should disallow time spent on what are essentially 'clerical' or secretarial tasks." *Spegon v. Catholic Bishop of Chi.*, 175 F.3d 544, 553 (7th Cir. 1999). Here such entries abound and are too many to list.[6] The paralegal's charges reflect not only her contributions to the legal aspects of the case but also her fees for copying and faxing documents, filing and retrieving papers, as well as delivering documents to opposing counsel or the Court. Most of such entries are listed along with the tasks relevant to the training of a paralegal, thus making an exact determination of actual time spent on clerical tasks impossible. Nevertheless, an approximate calculation of time allocated to these duties shows that $4,272 should be subtracted from her charges.

In conclusion, the Court finds that the lodestar for this case is $230,003.65 ($274,348.90 minus the adjustments of $44,345.25). This is not the end of the calculation, however. The Court must determine if the lodestar must be adjusted to reflect the Plaintiff's partial success in this case.

**(3)** *An Adjustment to Reflect the Plaintiff's Partial Success*

The Defendant argues that if the Court decides to award attorneys' fees, the Plaintiff should recover less than 5% of the reasonable time billed during this litigation. The Defendant believes that the Plaintiff's victory on its copyright claim, under which the Plaintiff requests attorneys' fees, is minuscule and insignificant in relation to the breach of contract claims. Moreover, it maintains that the Plaintiff may not recover for his claims of interference with contractual relation and trademark

---

[6] *See, e.g.,* Pf. Ex. A, entries for 01/09/2003, 01/20/2003, 04/14/2003, 06/06/2003, etc.

9

infringement because it voluntarily dismissed those claims before the case went to the jury.

The Plaintiff responds that all claims were factually and legally tied in with the copyright claim, as it could succeed on this claim only by proving to the jury that the Defendant breached the sales agreement, thus voiding the licensing agreement, which in turn revoked the Defendant's right in *Pirateer*. Also, the Plaintiff submits that the fees should not be reduced for dismissed counts because the dismissal was done for the judicial economy and more efficient presentation of issues to the jury. At the same time, the Plaintiff asserts that the facts and the law related to the dismissed counts are in common with the copyright infringement claim, thus making the time spent on those claims compensable.

As explained above, before making any adjustments to the lodestar, the Court must answer two questions: Were unsuccessful claims related to prevailing claims by a common core of facts or legal theories? And did the Plaintiff achieve the level of success that makes the hours reasonably expended a satisfactory basis for making a fee award? The Court agrees with the Plaintiff that the breach of the sales agreement and breach of licensing agreement claims are related to the copyright infringement claim. The Plaintiff could have established the copyright infringement claim only by first demonstrating that the parties had a sales agreement, which was related to the licensing agreement and which terminated once the sales agreement was breached. Had the Plaintiff sued the Defendant only for the copyright claim, it still would have had to prove the facts related to the sales agreement and the licensing agreement. These three claims share the same factual foundation, and none of the cases cited by the Defendant contradict this conclusion. Accordingly, no adjustments in the bill for fees are necessary for the contract claims.

However, an adjustment is warranted for interference with the contractual relation claim,

which was unrelated to the copyright claim either by common facts or legal theories. Under this claim, the Plaintiff alleged that the Defendant distributed the Plaintiff's secret customer list to its independent sales representatives and that the customers on the list chose to do business with the Defendant rather than the Plaintiff. The Plaintiff could have brought that claim independent of the copyright infringement claim, as the basis for its recovery was in distinct facts and law. The success of the copyright claim did not depend on the contractual interference claim, which centered around the allegations that the Defendant misappropriated the Plaintiff's customer list so as to obtain customers in the specialty market for the Defendant's line of products. The Court is mindful of the Plaintiff's suggestion that it dismissed this claim to streamline the case for the jury. Yet, neither keeping the facts straight for the jury, nor strategically dropping a claim that was doomed to fail, justifies the imposition of the attorneys' fees for unsuccessful claims upon the opponent.

The Plaintiff's attorneys' bill is not detailed enough for the Court to identify the specific hours associated with the interference claim. However, the Court estimates that the Plaintiff's attorneys allocated about 20% of time to pursuing, discovering, and applying the facts and the law related to its contractual interference claim. In particular, Mr. Fenton had to gather the documents, depose the Plaintiff's and the Defendant's employees, research the law, and conduct portions of the trial in accordance with his discoveries. The Plaintiff held onto this claim to the very end—until the case went to the jury—and 20% is an accurate assessment of the time it consumed for the Plaintiff's attorneys. The Court makes this finding on the record before it and from its personal experience. *See Vocca v. Playboy Hotel of Chi., Inc.*, 686 F.2d 605, 607 (7th Cir. 1982) ("[T]he court may properly rely on its own experience to estimate the time reasonably required for the work claimed."). Accordingly, the Court will subtract an additional $46,000 from the Plaintiff's bill for fees (20% of

$230,003.65).

Only a 2% downward adjustment is necessary for the trademark infringement claim the Plaintiff dropped before the case went to the jury. While this was an unsuccessful claim, it did not consume much extra time for the Plaintiff's attorneys. Most of the elements of this claim were the same as the elements of the copyright infringement claim, and only an insignificant portion of discovery, legal arguments, and trial time could be attributed specifically to this claim. The Court abides by the principle expressed above that the opponent should not be expected to pick up a bill for unsuccessful claims that were strategically dropped. Therefore, the Court reduces the Plaintiff's award of attorneys' fees by $4,600 (2% of $230,003.65).

## CONCLUSION

In its motion, the Plaintiff requests an award of costs and attorneys' fees in the amounts of $16,856.68 and $274,348.90. The Defendant concedes the costs but argues that the Plaintiff should recover either nothing or no more than 5% of the fees requested. After considering the nature of the Plaintiff's success and after carefully reviewing the bill for fees and the relationship between the successful and unsuccessful claims, the Court determines that the Plaintiff may recover a portion of the requested fee. The Court finds that an adjustment of $94,945 ($46,000 for excessive billing time, $44,345.25 for the unsuccessful interference with contractual relation claim, and $4,600 for the unsuccessful trademark infringement claim) to the total amount of the attorneys' fees the Plaintiff requests is appropriate .

Therefore, the Court GRANTS IN PART and DENIES IN PART the Plaintiff's Motion to Assess Costs and to Award Attorney Fees as Part of the Costs [DE 200], and AWARDS the Plaintiff

$179,403.90 for attorneys' fees and $16,856.68 for costs.

SO ORDERED on June 1, 2006.

    S/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT